IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


ANTHONY DIAL,                     )
                                  )
          Plaintiff,              )
                                  )
     v.                           )          1:20CV1135
                                  )
ROBESON COUNTY and ROBESON        )
COUNTY DEPARTMENT OF SOCIAL       )
SERVICES,                         )
                                  )
          Defendants.             )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

    This matter comes before the court on the Motion to Dismiss
for failure to state a claim filed by Defendants Robeson County
and Robeson County Department of Social Services ("Robeson
DSS"). (Doc. 7.) This motion is brought pursuant to Fed. R. Civ.
P. 12(b)(6).

    For the reasons stated herein, this court will grant in
part and deny in part Defendants' motion.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    On a motion to dismiss, a court must "accept as true all of
the factual allegations contained in the complaint . . . ." Ray
v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (quoting King v.
Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016)).

Although a motion to dismiss "tests the sufficiency of a complaint," Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013), and this court's evaluation is "thus generally limited to a review of the allegations of the complaint itself," Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016), this court may consider documents that are incorporated into the complaint by reference where the document is integral to the complaint, see id. at 166, and the plaintiff does not challenge the documents' authenticity, see Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999); see also Norman v. Tradewinds Airlines, Inc., 286 F. Supp. 2d 575, 580 (M.D.N.C. 2003) ("The underlying concern in cases applying this rule is to protect a plaintiff who might not have notice of (and an opportunity to fully respond to) facts newly introduced by the defendant in conjunction with motion of dismissal."). Other courts within the Fourth Circuit have considered Equal Employment Opportunity Commission ("EEOC") charges attached to motions to dismiss, where plaintiffs relied on those documents in their complaints and did not contest the exhibits' authenticity. See, e.g., Alexander v. City of Greensboro, No. 1:09-CV-934, 2011 WL 13857, at *6-8 (M.D.N.C. Jan. 4, 2011); Cohen v. Sheehy Honda of Alexandria, Inc., No. 1:06cv441 (JCC), 2006 WL 1720679, at *2 (E.D. Va. June. 19, 2006) (finding

-2-

the EEOC charge was integral to complaint because plaintiff "would have been unable to file a civil action without first filing such a charge").

This court finds that the Complaint incorporates by reference Plaintiff's Charges of Discrimination to the EEOC, which Defendants attached as exhibits to their Memorandum in Support of their Motion to Dismiss. (Ex. 1 – 2017 EEOC Charge (Doc. 8-1); Ex. 2 – 2019 EEOC Charge (Doc. 8-2).)

First, the 2017 and the 2019 EEOC Charges are integral to the Complaint. The same incidents form the basis for the allegations in the Complaint and the 2017 and 2019 EEOC Charges, (compare Complaint ("Compl.") (Doc. 3) ¶¶ 4-13, 15-23, with 2017 EEOC Charge (Doc. 8-1); 2019 EEOC Charge (Doc. 8-2), and this court's jurisdiction is predicated on Plaintiff having filed the Charges of Discrimination and received Right to Sue Letters, see 42 U.S.C. § 2000e-(5)(f) et seq. The Complaint establishes that Plaintiff timely submitted charges to the EEOC, and the EEOC issued Plaintiff right to sue letters for both charges. (Compl. (Doc. 3) ¶¶ 12, 18, 22.)

Second, Plaintiff does not challenge the authenticity of the Charges of Discrimination. Plaintiff refers to the charges in his Complaint, (see id. ¶¶ 12, 18), and in support of his arguments in his Memorandum in Opposition to Defendants' Motion

-3-

to Dismiss, (see Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Br.") (Doc. 10) at 2).

Defendants cite allegations in the Charges of Discrimination in their Brief in Support of their Motion to Dismiss. (See Br. in Supp. of Mot. to Dismiss ("Defs.' Br.") (Doc. 8) at 4-5.)

In the absence of any objection, this court will consider the allegations in the Complaint to incorporate those in the Charges of Discrimination, and the facts contained therein will be considered as part of Plaintiff's Complaint. The facts, taken in the light most favorable to Plaintiff, are as follows.

Plaintiff is a Native American male who has worked for Defendants since 2000 "in a variety of capacities." (Compl. (Doc. 3) ¶ 4.) Plaintiff alleges that in 2014 he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") regarding discrimination concerns. (Id. ¶ 7.)

A. **Director of DSS Position**

On October 10, 2016, Plaintiff applied for a position as the Director of DSS. (Id. ¶ 8.) He interviewed and "scored the highest of all the candidates." (Id.) After Plaintiff's initial interview, "Defendants re-opened the interview phase of the search, upon information and belief, to obtain a director of a

-4-

different race than Plaintiff." (Id. ¶ 9). Plaintiff re-interviewed for the position, but this time "the new questions were specifically focused on areas in which Plaintiff ha[d] limited experience and that the other candidate, Velvet Nixon, had extensive experience." (Id.) Plaintiff alleges these questions were changed because Defendants wanted to hire a black candidate. (Id.) The three finalists for the Director of DSS position were black. (Id.) Ms. Nixon, a black female, was offered and accepted the position. (Id. ¶ 10.) Plaintiff trained Ms. Nixon in her new position. (Id. ¶ 11.)

Plaintiff filed an EEOC Charge of Discrimination within 180 days of these actions and incorporated concerns of retaliation because of his prior EEOC activity in 2014. (Id. ¶¶ 12-13.)

## B. Assistant County Manager Position

On May 1, 2019, Plaintiff applied and was interviewed for the position of Assistant County Manager. (Id. ¶ 15.) Plaintiff was told he was not offered the position because "he was not the most qualified candidate." (Id. ¶ 16.) He was also told "that his prior EEOC activity was a negative factor in his scoring for the position." (Id.) Shelton Hill, a white male, "with less education and experience and fewer qualifications than Plaintiff" was offered and accepted the position. (Id.)

In July 2019, Plaintiff filed another EEOC Charge of Discrimination and amended the 2017 EEOC Charge to include "this new retaliatory information." (Id. ¶ 18.)

On August 14, 2020 and September 9, 2020, Plaintiff received right to sue letters on the Charges of Discrimination from the office of the EEOC. (Id. ¶ 22.)

### C. Other Allegations of Retaliation

Plaintiff makes several additional allegations of retaliatory conduct by Defendants. First, Plaintiff alleges that during the interview phase for the Director of DSS position, the decisionmakers were told Plaintiff was under investigation for Medicaid fraud. (Id. ¶ 25.) Second, in spring 2019, Plaintiff was disqualified from consideration for the Deputy Director of DSS position because of a potential lawsuit related to the investigation. (Id. ¶ 27.) Third, Plaintiff alleges that because he voiced concerns regarding racial disparity in promotions and work environment for Native Americans, he "suffered excessive scrutiny of his performance, was subjected to factually unsubstantiated investigations, undermining of his authority with staff, and deprived of promotions and a professionally satisfying work environment as compared to his non-Native American coworkers." (Id. ¶ 29.)

D.    **Procedural History**

Plaintiff filed a charge of employment discrimination alleging race and sex discrimination and retaliation with the EEOC on May 16, 2017. (2017 EEOC Charge (Doc. 8-1).) Plaintiff filed another charge of employment discrimination alleging race discrimination and retaliation with the EEOC on December 10, 2019. (2019 EEOC Charge (Doc. 8-2).)

Plaintiff filed his Complaint in Guilford County Superior Court on November 12, 2020. (Compl. (Doc. 3).) Defendants filed a Petition for Removal on December 16, 2020. (Doc. 1.) Defendants then moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), (Doc. 7), and filed a brief in support of their motion, (Defs.' Br. (Doc. 8)). Plaintiff responded, (Doc. 9), and filed a brief in support of his response, (Pl.'s Br. (Doc. 10)); and Defendants replied, (Doc. 11).

## II. **STANDARD OF REVIEW**

Under federal law, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be facially plausible, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the

-7-

defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556–57). When ruling on a motion to dismiss, a court must accept the complaint's factual allegations as true. Id. Further, "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor." Est. of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted).

Nevertheless, the factual allegations must be sufficient to "raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 555, 570; see also Iqbal, 556 U.S. at 680; Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (applying the Twombly/Iqbal standard to evaluate the legal sufficiency of pleadings). A court cannot "ignore a clear failure in the pleadings to allege any facts which set forth a claim." Est. of Williams-Moore, 335 F. Supp. 2d at 646. Consequently, even given the deferential standard allocated to pleadings at the motion to dismiss stage, a court will not accept mere legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, [will] not suffice." <u>Iqbal</u>, 556 U.S. at 678.

Employment discrimination complaints must meet the <u>Twombly/Iqbal</u> plausibility standard; however, the plaintiff is not required to make out a prima facie case or satisfy any heightened pleading requirements at the motion to dismiss stage. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 511 (2002); <u>McCleary-Evans v. Md. Dep't of Transp.</u>, 780 F.3d 582, 584–85 (4th Cir. 2015). The plaintiff is, however, required to plead facts that permit the court to reasonably infer each element of the prima facie case, including less favorable treatment than similarly-situated employees outside of the protected class. <u>McCleary-Evans</u>, 780 F.3d at 585; <u>see also</u> <u>Iqbal</u>, 556 U.S. at 682–83 (plaintiff must plead facts supporting reasonable inference of discriminatory intent).

## III. <u>ANALYSIS</u>

Plaintiff alleges the following causes of actions against Defendants: First, race and sex discrimination in violation of Title VII; second, retaliation in violation of Title VII; and third, violation of §§ 1981 and 1983. (Compl. (Doc. 3) ¶¶ 7-39.)

As an initial matter, the parties disagree about whether Defendant Robeson DSS is a proper party to this lawsuit. (<u>Compare</u> Defs.' Br. (Doc. 8) at 8-9 <u>with</u> Pl.'s Br. (Doc. 10) at

12-13.) Defendant Robeson DSS argues that it is not an entity capable of being sued. (Defs.' Br. (Doc. 8) at 8.) This court agrees and will dismiss all claims against Defendant Robeson DSS.

"The capacity of a governmental body to be sued in the federal courts is governed by the law of the state in which the district court is held." Avery v. Burke Cnty., 660 F.2d 111, 113-14 (4th Cir. 1981); see also Fed. R. Civ. P. 17(b)(3). "In North Carolina, in the absence of a statute, 'the capacity to be sued exists only in persons in being.' Therefore, departments of municipalities and counties are not susceptible to suit without statutory authorization." Evans v. Pitt Cnty. Dep't of Soc. Servs., 972 F. Supp. 2d 778, 788-89 (E.D.N.C. 2013), vacated in unrelated part, appeal dismissed in part sub nom. Evans v. Perry, 578 F. App'x 229 (4th Cir. 2014), and aff'd in part, 616 F. App'x 636 (4th Cir. 2015) (quoting McPherson v. First & Citizens Nat'l Bank of Elizabeth City, 240 N.C. 1, 18, 81 S.E.2d 386, 397 (1954)).

Counties are legal entities capable of being sued, N.C. Gen. Stat. § 153A-11; however, there is no statutory basis for suing a department of social services, see Evans, 972 F. Supp. 2d at 788 (noting no statutory basis for suing a department of social services in North Carolina); Malloy v. Durham Cnty. Dep't

-10-

of Soc. Servs., 58 N.C. App. 61, 67, 293 S.E.2d 285, 289 (1982)

("With respect to the County's rights of subrogation,

its Department of Social Services is no more capable of suing in

its own name than is some lower echelon employee of such

Department."). It is for this reason that many district courts

in North Carolina have dismissed claims against departments of

social services. See Hester v. Colvin, No. 1:16CV410, 2017 WL

375656, at *3 (M.D.N.C. Jan. 26, 2017); Evans, 972 F. Supp. 2d

at 789; Powell v. Nash Cnty. Dep't of Soc. Servs., No. 5:14-CV-

281-FL, 2014 WL 4055831, at *2 (E.D.N.C. July 22, 2014), report

and recommendation adopted, No. 5:14-CV-281-FL, 2014 WL 4062715

(E.D.N.C. Aug. 14, 2014); Moua v. Alexander Cnty., No.

5:09CV19-V, 2012 WL 252648, at *6 (W.D.N.C. Jan. 26, 2012); see

also Johnson v. Marrow, 228 N.C. 58, 59, 44 S.E.2d 468, 470

(1947) ("Where a county is the real party in interest, it must

sue and be sued in its name.").

Given the lack of statutory authority to proceed

independently against Robeson County's Department of Social

Services and following the lead of many other federal courts in

this state, this court will dismiss Plaintiff's Complaint

against Defendant Robeson DSS.

-11-

## A.   __Title VII Discrimination__

Plaintiff has alleged race-based employment discrimination against Defendant[1] pursuant to Title VII and 42 U.S.C. § 1981.[2] Plaintiff's Complaint alleges that Defendant failed to promote Plaintiff for the Director of DSS and Assistant County Manager positions in favor of a black female and a white male, respectively. (Compl. (Doc. 3) ¶¶ 10, 16.)

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1). The elements of a Title VII employment discrimination claim are: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Ct. App., 626 F.3d 187, 190 (4th Cir. 2010); see also Gerner v. Cnty. of Chesterfield, 674 F.3d 264, 266-68 (4th Cir. 2012) (gender). At

---

[1] Because this court will dismiss the Complaint against Defendant Robeson DSS, this court will use "Defendant" hereinafter to refer to Defendant Robeson County, the remaining defendant in these proceedings.

[2] As the Fourth Circuit has explained, "[t]he elements an employee must prove are the same under either provision." Pryor v. United Air Lines, Inc., 791 F.3d 488, 495 (4th Cir. 2015).

-12-

the motion to dismiss stage, Plaintiff's allegations must also show that discrimination is a more likely reason for disparate treatment rather than any other "obvious alternative explanation" that is present on the face of the complaint and "justified by [] nondiscriminatory intent." See Iqbal, 556 U.S. at 682.

This court finds that Plaintiff has plausibly alleged the first three elements of a Title VII employment discrimination claim. First, Plaintiff has alleged that he is Native American. (Compl. (Doc. 3) ¶ 4.) Second, Plaintiff has alleged satisfactory job performance at the time he was not promoted. (See id. (alleging "Plaintiff is highly qualified and has served the Defendant in a variety of capacities, with distinction, while so employed").) Third, there is no apparent dispute between the parties as to whether failure to promote constitutes an adverse employment action, and the Fourth Circuit recognizes the failure to promote as such. See, e.g., Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005). Therefore, the relevant question in this case is whether Plaintiff has plausibly alleged that Defendant treated similarly-situated non-Native American employees more favorably. See Woods v. City of Greensboro, 855 F.3d 639, 641 (4th Cir.) (2017).

-13-

### 1. **Director of DSS Position**

Plaintiff alleges that his non-selection as Director of DSS was a violation of Title VII due to race and sex discrimination. (Compl. (Doc. 3) ¶ 12.) Defendant argues that Plaintiff has offered only conclusory statements that require this court to speculate on the reason Plaintiff was not chosen. (Defs.' Br. (Doc. 8) at 12-13.) Plaintiff responds that he has established a prima facie case of racial discrimination. (Pl.'s Br. (Doc. 10) at 7.)[3] Plaintiff further argues that at the motion to dismiss stage he is not required to show he was more qualified than the person selected; rather, all he is required to show is that someone outside the protected class received the promotion. (Id. at 8.)

The Fourth Circuit has held that conclusory allegations that the employer was predetermined to select based on race do not plausibly state a claim for relief under Title VII. See

---

[3] Plaintiff's response brief does not address sex discrimination in violation of Title VII. (See Pl.'s Br. (Doc. 10) at 6-9.) Because Plaintiff failed to address Defendant's arguments regarding whether Defendant discriminated against Plaintiff because of his sex, this court finds that Plaintiff has abandoned this claim, and therefore this court will dismiss Plaintiff's claim of sex discrimination in violation of Title VII. See Oliver v. Baity, 208 F. Supp. 3d 681, 690 (M.D.N.C. 2016) ("Courts have recognized that a party's failure to address an issue in its opposition brief concedes the issue."); see also Feldman v. L. Enf't Assocs. Corp., 955 F. Supp. 2d 528, 536 (E.D.N.C. 2013) (gathering cases).

-14-

McCleary-Evans, 780 F.3d at 588. In McCleary-Evans, the plaintiff, a black female, alleged her employer refused to hire her for two different positions because of her race and sex in violation of Title VII. Id. at 583. In support of that claim, the plaintiff alleged the employer was "biased" and had "predetermined" that it would select white applicants. Id. Importantly, the complaint "did not include any allegations regarding the qualifications or suitability of the persons hired to fill the two positions." Id. at 584. The Fourth Circuit thus found it could "only speculate that the persons hired were not better qualified, or did not perform better during their interviews, or were not better suited based on experience and personality for the positions." Id. at 585-86. Therefore, the Fourth Circuit dismissed the complaint. Id. at 586 (quoting Iqbal, 556 U.S. at 678) (concluding the plaintiff's complaint "stop[ped] short of the line between possibility and plausibility of entitlement to relief").

This court finds that with respect to the non-hiring of Plaintiff for the Director of DSS position, Plaintiff has failed to plausibly allege a claim for relief. Although Plaintiff does allege Defendant failed to hire him for the Director of DSS position, he does not allege facts sufficient to show that the reason Defendant failed to hire him as the Director of DSS was

-15-

because of his race. Plaintiff repeatedly alleges Defendant did not promote Plaintiff because it wanted a non-Native American. (See, e.g., Compl. (Doc. 3) ¶ 9.) But those "naked assertions" – a "formulaic recitation" of the necessary elements – "are no more than conclusions" and therefore insufficient. Iqbal, 556 U.S. at 678-79.

Specifically, Plaintiff alleges that Defendant re-opened the interview phase "to obtain a director of a different race than Plaintiff," and that the questions in the second interview were changed to favor Ms. Nixon because the questions were about "areas in which Plaintiff has limited experience and that the other candidate, Velvet Nixon, had extensive experience." (Compl. (Doc. 3) ¶ 9.) In short, Plaintiff is claiming that Defendant predetermined to select someone who was a different race than Plaintiff. This is conclusory and insufficient to state a claim for relief under Title VII. See McCleary-Evans, 780 F.3d at 586 ("The allegation that the [employer] did not hire [the employee] because its decision makers were biased is simply too conclusory."). Taking the facts alleged in the Complaint in the light most favorable to Plaintiff, Defendant decided to re-open the interview process and asked questions regarding areas in which Plaintiff had limited experience. (Compl. (Doc. 3) ¶ 9.) Plaintiff is asking this court to

-16-

impermissibly speculate that the reason for the re-interviewing and the change in questioning was because Defendant wanted a black person in the Director position. This court declines to do so. See Coleman, 626 F.3d at 191 (affirming the district court's finding that the plaintiff failed to state a Title VII race discrimination claim because "the complaint's allegations of race discrimination do not rise above speculation").

Plaintiff also argues he is not required to show he was more qualified than Ms. Nixon for the position of Director of DSS. (Pl.'s Br. (Doc. 10) at 7-8.) However, in the absence of any allegations of direct evidence of discrimination, Plaintiff must plead facts supporting a reasonable inference of discrimination. In Swierkiewicz, the Supreme Court noted that the plaintiff specifically alleged that the hired employee was "less experienced and less qualified" because that employee "had only one year of underwriting experience at the time he was promoted," whereas the plaintiff "had 26 years of experience in the insurance industry." Swierkiewicz, 534 U.S. at 508. The Supreme Court held that the plaintiff's complaint was sufficient to survive a motion to dismiss. Id. at 515. Moreover, the Fourth Circuit in McCleary-Evans found that because the plaintiff in McCleary-Evans alleged no facts indicating whether the plaintiff was more experienced or qualified than the employee hired, the

-17-

plaintiff had not sufficiently stated a claim under Title VII.
See McCleary-Evans, 780 F.3d at 586 (citing Swierkiewicz, 534
U.S. at 508). An allegation that Plaintiff was more qualified
than Ms. Nixon may not be required pleading, but Plaintiff must
plead some facts to plausibly permit an inference of
discrimination.

Unlike the plaintiff in Swierkiewicz, Plaintiff has not
alleged Ms. Nixon was less experienced and less qualified for
the position of Director of DSS. At most, Plaintiff alleged he
had to train Ms. Nixon in her new position. (Compl. (Doc. 3)
¶ 11.) That allegation does not equate to a finding that Ms.
Nixon was less qualified than Plaintiff. Additionally,
Plaintiff's allegation that "he scored the highest of all the
candidates and that he met the posted criteria," (id. ¶ 8), for
the Director job does not plausibly allege he was more qualified
than Ms. Nixon or any other candidate when Plaintiff fails to
allege facts to explain why the "highest score" or meeting "the
posted criteria" establishes that Plaintiff was more qualified
than other candidates.

Even assuming Plaintiff has pled sufficient facts plausibly
alleging he was not promoted because he is Native American, the
face of the Complaint evidences a non-discriminatory reason for
why Plaintiff was not hired for the Director position. The

Complaint alleges that "during the interview phase for the Director position, the decision makers were told that Plaintiff was under investigation alleging Medicaid fraud unrelated to his duties with the Defendants."[4] (Id. ¶ 25.) This court is not precluded from considering obvious non-discriminatory reasons for any disparate treatment. See Tabb v. Bd. of Educ. of Durham Pub. Schs., No. 1:17CV730, 2019 WL 688655, at *8 (M.D.N.C. Feb. 19, 2019) (citing Woods, 855 F.3d at 647, 648, 649, 652, for the proposition that a court may consider "obvious non-discriminatory alternative reasons for any disparate treatment" at the motion to dismiss stage). The fact that Plaintiff alleges a fact which plausibly proves a non-discriminatory basis for the employer's decision further dispels any possible plausible inference of discrimination based on race. Thus, this court finds Plaintiff has failed to sufficiently plead facts stating a

---

[4] Plaintiff has not alleged that Defendant was investigating the Medicaid fraud allegation against Plaintiff or who told the decisionmakers for the Director of DSS position about the investigation. Although it may be discriminatory for Defendant to initiate a baseless investigation against Plaintiff in retaliation against his protected activity, nothing in the Complaint supports the contention that Defendant was in any way involved with the Medicaid fraud investigation. Therefore, this court finds that consideration of the Medicaid fraud investigation during the interview process for the Director of DSS position is somehow a suggestion of discrimination. Similarly, Plaintiff offers no plausible reason why the fact of that investigation should not have been considered by an employer. Plaintiff appears to acknowledge he was under investigation. (Compl. (Doc. 3) ¶ 26.)

-19-

plausible claim of race discrimination in violation of Title VII. Accordingly, this court will grant Defendant's Motion to Dismiss Plaintiff's claim for race discrimination in violation of Title VII with respect to the non-hiring of Plaintiff as Director of DSS.

## 2.   Assistant County Manager Position

Plaintiff also alleges that Defendant violated Title VII's prohibition against racial discrimination when it failed to promote Plaintiff to Assistant County Manager. (Compl. (Doc. 3) ¶¶ 15-18.) Defendant argues that "[m]erely stating that Plaintiff, a Native American male, was not hired and Shelton Hill, a Caucasian male, was hired, is not sufficient to plausibly allege that the decision was made due to race discrimination." (Defs.' Br. (Doc. 8) at 14.) Plaintiff responds that he has made out a prima facie case of race discrimination and has pled facts showing he was at least as qualified as Mr. Hill. (Pl.'s Br. (Doc. 10) at 7-8.)

Here, Plaintiff alleges that he had "excellent qualification[s]" for the Assistant County Manager position but was told he was not promoted to the position "because he was not the most qualified candidate." (Compl. (Doc. 3) ¶ 16.) Plaintiff further alleges "he was informed that his prior EEOC activity

was a negative factor in his scoring for the position." (Id.)[5]
Plaintiff appears to allege that County Manager Kellie Blue was
a decisionmaker for the position, (see id. ¶ 17), but Plaintiff
does not allege Ms. Blue was aware of Plaintiff's prior EEOC
charges. Because Plaintiff has not pled facts plausibly alleging
the decisionmakers for the Assistant County Manager position
knew of Plaintiff's prior EEOC activity,[6] Plaintiff's prior EEOC
charge cannot be the basis of showing Defendant discriminated
against Plaintiff when it did not promote Plaintiff to Assistant
County Manager.

---

[5] Although Plaintiff alleges that he was informed his prior
EEOC activity negatively affected his application, Plaintiff
does not describe who made this allegation, when it was made, or
whether the source had any plausible basis for that allegation.
Under these circumstances, the allegation is conclusory and
fails to provide any plausible factual support for a claim of
retaliation.

[6] Plaintiff's allegations as to the relationship between the
County Manager (Kellie Blue), the County Commissioners, and
Plaintiff's application for Assistant County Manager is
confusingly pled. (See Compl. (Doc. 3) ¶ 17.) It appears
Plaintiff alleges that Ms. Blue was the decisionmaker in hiring
for the position. (Id. (alleging "while the selection decision
for assistant county manager was within the scope of County
Manager Kellie Blue's duties . . . .")) It also appears the
County Commissioners could have provided substantive input to
Ms. Blue. (Id.) Even construing these allegations in the light
most favorable to Plaintiff, Plaintiff offers no facts to
plausibly suggest the County Commissioners were aware of
Plaintiff's EEOC claim or that the County Commissioners did in
fact provide input to Ms. Blue.

-21-

However, other allegations in the Complaint support a finding by this court that Plaintiff has sufficiently stated a claim for relief under Title VII. The Complaint alleges that Mr. Hill had "less education and experience and fewer qualifications than Plaintiff." (Compl. (Doc. 3) ¶ 16.) This is akin to the plaintiff in Swierkiewicz. See Swierkiewicz, 534 U.S. at 508, 515 (holding the complaint should not be dismissed where the plaintiff alleged that he had more years of experience and qualifications than the individual who was hired instead of the plaintiff). Because the Complaint alleges that Plaintiff had more education and experience than Mr. Hill (a white male), and Defendant promoted Mr. Hill over Plaintiff, Plaintiff has "allege[d] facts to satisfy the elements of a cause of action created by [Title VII]." McCleary-Evans, 780 F.3d at 585. Assuming the truth of Plaintiff's allegations at this stage of the proceedings, Plaintiff has alleged Defendant failed to promote him over a white person despite Plaintiff having more experience and qualifications. Thus, this court finds Plaintiff has sufficiently pled facts stating a plausible claim of race discrimination in violation of Title VII. Accordingly, this court will deny Defendant's Motion to Dismiss Plaintiff's claim for race discrimination in violation of Title VII with respect to the non-hiring of Plaintiff as Assistant County Manager.

-22-

**B.** <u>**Title VII Retaliation**</u>

In addition to Plaintiff's claim for Title VII discrimination, Plaintiff alleges that Defendant retaliated against him in violation of Title VII and Section 1981.[7] Title VII makes it unlawful for an employer to "discriminate against any of his employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). "To establish a prima facie case of retaliation . . . , a plaintiff must prove '(1) that [the employee] engaged in a protected activity,' as well as '(2) that [the] employer took an adverse employment action against [the employee],' and '(3) that there was a causal link between the two events.'" <u>Boyer-Liberto v. Fontainebleau Corp.</u>, 786 F.3d 264, 281 (4th Cir. 2015) (quoting <u>EEOC v. Navy Fed. Credit Union</u>, 424 F.3d 397, 405-06 (4th Cir. 2005)).

Proving causation at the pleading stage is "not [] onerous," and retaliation plaintiffs "do not have to show at the <u>prima facie</u> stage that their protected activities were but-for causes of the adverse action." <u>Strothers v. City of Laurel</u>, 895 F.3d 317, 335 (4th Cir. 2018). Still, plaintiffs must allege

---

[7] This analysis is identical for Plaintiff's 42 U.S.C. § 1981 retaliation claim. <u>Boyer-Liberto v. Fontainebleau Corp.</u>, 786 F.3d 264, 281 (4th Cir. 2015).

-23-

facts plausibly supporting an inference of causation, a task
that may be accomplished by alleging facts that show the
employer took an adverse action "soon after becoming aware" of
protected activity. Id. at 336 (emphasis added); see also Villa
v. CavaMezze Grill, LLC, 858 F.3d 896, 899, 901 (4th Cir. 2017)
(discussing importance of an employer's subjective knowledge
since an adverse action must be motivated by a desire to
retaliate in order to be actionable); Carter v. Ball, 33 F.3d
450, 460 (4th Cir. 1994) (dealing with termination following
notice employee filed EEOC charge); Welton v. Durham Cnty., No.
1:17-CV-258, 2018 WL 4656242, at *3 (M.D.N.C. Sept. 27, 2018),
aff'd, 781 F. App'x 242 (4th Cir. 2019) (discussing Strothers,
895 F.3d at 335–36).

    If a plaintiff is proving causation by temporal proximity
alone, the adverse employment action must be "very close" in
time to the protected activity. Clark Cnty. Sch. Dist. v.
Breeden, 532 U.S. 268, 273 (2001) (per curiam). "A lengthy time
lapse between the employer becoming aware of the protected
activity and the alleged adverse employment action, as was the
case here, negates any inference that a causal connection exists
between the two." Dowe v. Total Action Against Poverty in
Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998); see also
Penley v. McDowell Cnty. Bd. of Educ., 876 F.3d 646, 656 (4th

Case 1:20-cv-01135-WO-JLW   Document 12   Filed 09/29/21   Page 24 of 35

Cir. 2017) (finding that eight to nine months between awareness of the protected activity and the alleged adverse employment action is not sufficiently close in time). If too long a period of time passes between the protected activity and the retaliatory conduct, "courts may look to the intervening period for other evidence of retaliatory animus." Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007).

Additionally, the Fourth Circuit has consistently required the decisionmaker know of the protected activity at the time the alleged retaliation occurred. See Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 124 (4th Cir. 2021) (quoting Talley v. U.S. Postal Serv., 720 F.2d 505, 508 (8th Cir. 1983)) ("Thus, where a relevant decisionmaker is unaware of any prior complaints, a plaintiff 'cannot establish the necessary causal connection between [his] filing a complaint . . . and [his] termination.'").

## 1. **Director of DSS Position**

The Complaint alleges that Plaintiff was not promoted to Director of DSS because of his 2014 EEOC Charge. (Compl. (Doc. 3) ¶ 13.) Defendant argues that because three years separate the 2014 EEOC Charge and the non-hiring of Plaintiff for Director of DSS in 2017, too much time has passed for this court to infer a causal link. (Defs.' Br. (Doc. 8) at 18.) Although, "evidence of

-25-

recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation," <u>Lettieri</u>, 478 F.3d at 650, the Complaint does not allege additional adverse employment actions between 2014 and 2017. This court finds three years between the protected activity and the adverse employment action does not establish a causal link. <u>See</u> <u>Breeden</u>, 532 U.S. at 273-74 (2001). Thus, Plaintiff has not plausibly alleged that the failure to promote to Director of DSS was caused by Plaintiff's 2014 EEOC Charge. Accordingly, Plaintiff has failed to state a Title VII retaliation claim with respect to the non-hiring of Plaintiff for DSS Director.

### 2. <u>Assistant County Manager Position</u>

In addition to claiming Defendant retaliated against Plaintiff when it did not hire him as Director of DSS, Plaintiff claims Defendant retaliated against him when it did not hire him as Assistant County Manager. (Compl. (Doc. 3) ¶ 18.) Plaintiff claims he was not promoted because of his 2017 EEOC Charge. (<u>Id.</u>)

Here, two years passed between the protected activity (the 2017 EEOC Charge) and the adverse employment action (not hired as Assistant County Manager). This court finds that two years between the protected activity and adverse employment action does not establish a causal link, especially since Plaintiff has

-26-

not alleged any intervening circumstances of retaliatory conduct by Defendants.[8] See discussion supra Part III.B.1. Moreover, Plaintiff has not alleged that the decisionmakers for hiring the Assistant County Manager were aware of any of Plaintiff's protected activity. Although Plaintiff alleges "he was informed that his prior EEOC activity was a negative factor in his scoring for the position," (Compl. (Doc. 3) ¶ 16), he does not allege who informed him, nor does he allege that County Manager Kellie Blue or any other decisionmaker was aware of Plaintiff's protected activity. Because two years lapsed before any allegedly retaliatory conduct by Defendant, and because Plaintiff has not alleged any decisionmaker was aware of his protected activity, this court finds Plaintiff has not plausibly alleged that the failure to promote to Assistant County Manager was caused by Plaintiff's 2017 EEOC Charge. Accordingly,

---

[8] Plaintiff argues in his response brief that "[t]he causal connection between the reporting of his concerns about racial and gender discrimination in the first interview process and the fraud allegations during the second interview process a few weeks later creates a clear temporal proximity between the events." (Pl.'s Br. (Doc. 10) at 10.) That Plaintiff raised concerns about race and gender discrimination in the interview for the Director of DSS position is alleged nowhere in the Complaint. "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184-85 (4th Cir. 2013) (citations omitted). Therefore, this court will not consider these new allegations in Plaintiff's response brief.

-27-

Plaintiff has failed to state a Title VII retaliation claim with respect to the non-hiring of Plaintiff for Assistant County Manager.

### 3. <u>Deputy Director of DSS Position</u>

The Complaint also alleges Defendant retaliated against Plaintiff because Plaintiff was disqualified from consideration for Deputy Director of DSS in spring 2019 because of a potential lawsuit arising out of a Medicaid fraud investigation. (Compl. (Doc. 3) ¶ 27.) This court finds Plaintiff has failed to plausibly allege a claim for retaliation based on these facts.

First, assuming that being disqualified from consideration for a position is an adverse employment action, it is unclear what protected activity is linked to Defendant's non-consideration of Plaintiff for Deputy Director of DSS. The Complaint contains no allegation linking Plaintiff's non-consideration to any protected activity. Further, the Complaint offers a non-discriminatory reason for why Plaintiff was not considered for the position: he was under investigation for Medicaid fraud, which could ultimately result in litigation. (<u>Id.</u>)

Second, it is unclear why this adverse employment action was not mentioned in the 2019 EEOC Charge. The non-consideration for Deputy Director of DSS occurred in "spring 2019" before

-28-

Plaintiff filed the 2019 EEOC Charge in July 2019, yet the 2019 EEOC Charge does not contain allegations that Plaintiff was not considered for Deputy Director of DSS. (2019 EEOC Charge (Doc. 8-2).) Defendant argues this goes beyond the scope of the allegations in the 2019 EEOC Charge, and "factual allegations in formal litigation must correspond to the allegations in an EEOC Charge." (Defs.' Br. (Doc. 8) at 19-20 (citing <u>Chacko v. Patuxent Inst.</u>, 429 F.3d 505, 509 (4th Cir. 2005)).) Plaintiff responds that <u>Chacko</u> does not apply because that case dealt with one type of Title VII violation in the EEOC charge and a different type of violation at trial. (Pl.'s Br. (Doc. 10) at 9.)[9]

Even if the non-consideration for Deputy Director of DSS was linked to the 2017 EEOC charge – the most recent protected activity prior to spring 2019 – Plaintiff has not plausibly

---

[9] In <u>Nealon v. Stone</u>, the Fourth Circuit held that a plaintiff may raise a retaliation claim for the first time in federal court where the plaintiff did not initially allege retaliation in the plaintiff's EEOC charge. <u>Nealon</u>, 958 F.2d 584, 590 (4th Cir. 1992). <u>Nealon</u> engaged in protected activity by reporting alleged gender discrimination due to different pay grades for males and females at the same job. <u>Id.</u> at 587. <u>Nealon</u> failed to include this protected activity as evidence of retaliation in her EEOC charge. <u>Id.</u> The Fourth Circuit found a plaintiff can raise a retaliation claim for the first time in federal court. <u>Id.</u> However, <u>Nealon</u> does not apply because in this case Plaintiff alleges retaliation that occurred <u>after</u> the protected activity. The EEOC charge was in 2017, and the non-selection for Deputy Director of DSS was in spring 2019. (Compl. (Doc. 3) ¶¶ 12, 27.)

alleged a causal link between the two. Two years passed without additional retaliatory acts between the protected activity and retaliatory conduct. Moreover, Plaintiff does not allege that Ms. Nixon – the decisionmaker – was aware of any of Plaintiff's prior EEOC charges. Therefore, this court finds Plaintiff has failed to state a Title VII retaliation claim with respect to the non-consideration of Plaintiff for Deputy Director of DSS.

### 4. Other Retaliation Allegations

The Complaint alleges additional retaliations against Plaintiff. (Compl. (Doc. 3) ¶¶ 25, 29.) Plaintiff appears to allege Defendant retaliated against him because he was subjected to a Medicaid fraud investigation. (See id. ¶ 25; Pl.'s Br. (Doc. 10) at 9.) This argument fails for several reasons. First, Plaintiff does not allege what protected activity is linked to the initiation of this fraud investigation. Second, Plaintiff does not allege Defendant was initiating the investigation, or that Defendant told the decisionmakers for the Director of DSS position about this investigation. (Compl. (Doc. 3) ¶ 25.) For these reasons, Plaintiff has not plausibly alleged a causal link between the Medicaid fraud investigation and any protected activity. See supra note 4.

Plaintiff further alleges he "suffered excessive scrutiny of his performance, was subjected to factually unsubstantiated

-30-

investigations, undermining of his authority with staff, and deprived of promotions and a professionally satisfying work environment as compared to his non-Native American coworkers." (Compl. (Doc. 3) ¶ 29.) Although this may constitute an adverse employment action, these allegations are unconnected to any protected activity. Plaintiff does not allege when these retaliatory acts occurred. Because Plaintiff has not alleged any temporal connection between the additional retaliatory acts and protected activity, Plaintiff fails to plausibly allege a Title VII retaliation claim.

In sum, Plaintiff has failed to sufficiently plead facts that plausibly allege Plaintiff was retaliated against in violation of Title VII. Accordingly, this court will grant Defendant's Motion to Dismiss with respect to Plaintiff's retaliation claim.

## C.   §§ 1983 and 1981[10]

Finally, Plaintiff alleges Defendant has violated Plaintiff's due process rights in violation of § 1983. (Compl. (Doc. 3) ¶ 35-37.) "To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the

---

[10] This court has previously addressed Plaintiff's § 1981 claims in its discussion of Plaintiff's Title VII discrimination and retaliation claims. See supra notes 2, 7.

United States, and that the alleged deprivation was committed under color of state law." <u>Am. Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49–50 (1999). Congress did not intend to impose liability on a municipality for a violation of a plaintiff's constitutional rights unless deliberate action attributable to the municipality itself was the "moving force" behind the plaintiff's deprivation. <u>Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397, 400 (1997) (citing <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978)). Thus, a plaintiff must prove two essential elements to establish liability under § 1983: "(1) that the defendant[] acted under color of state law and (2) that the plaintiff suffered a deprivation of a constitutional right as a result of that action." <u>Stevens v. Cabarrus Cnty. Bd. of Educ.</u>, 514 F. Supp. 3d 797, 808 (M.D.N.C. 2021) (quoting <u>Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth.</u>, 320 F. Supp. 2d 378, 403 (M.D.N.C. 2004)).

Under the "color of state law" requirement, a § 1983 plaintiff alleging race discrimination in violation of § 1981 and Title VII must adequately plead the following elements: "(1) the existence of an official policy or custom (2) that is fairly attributable to the local government (3) that proximately caused the underlying § 1981 race discrimination." <u>Davis</u>, 320 F. Supp.

2d at 403 (citing <u>Jordan ex rel. Jordan v. Jackson</u>, 15 F.3d 333, 338 (4th Cir. 1994)); <u>see also</u> <u>Monell</u>, 436 U.S. at 691 ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.").

The existence of an official policy or custom may be established in four ways: "(1) through an express policy . . . ; (2) through the decisions of a person with final policymaking authority; (3) through an omission . . . that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." <u>Lytle v. Doyle</u>, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks omitted).

In support of Plaintiff's claim that Defendant violated his right to due process, (Compl. (Doc. 3) ¶ 35), Plaintiff alleges "[t]hat the Defendants' conduct as herein set out was purposeful, deliberate, intentional, and done with reckless disregard of the rights of Plaintiff," (<u>id.</u> ¶ 36). Plaintiff further alleges "Defendants acted intentionally under color of law." (<u>Id.</u> ¶ 37.) This court finds that Plaintiff's allegations are unsupported by specific facts indicating there was any express policy, decision of a person with final policymaking

-33-

authority, omission amounting to deliberate indifference, or pervasive practice.

Because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Iqbal, 556 U.S. at 678, Plaintiff's allegations do not lead to a reasonable inference that Plaintiff's constitutional rights were violated by Defendant under color of law. Accordingly, this court will dismiss Plaintiff's § 1983 claim.

IV. **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (Doc. 7), is **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** as to Plaintiff's claim of Title VII race discrimination in the non-promotion to Director of Department of Social Services, Plaintiff's Title VII retaliation claim, and Plaintiff's § 1981 and § 1983 claims. The motion is **DENIED** as to Plaintiff's claim of Title VII race discrimination in the non-promotion to Assistant County Manager.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss is **GRANTED** as to Defendant Robeson County Department of Social Services and this Defendant is hereby **DISMISSED** from this action.

-34-

This the 29th day of September, 2021.

_____
United States District Judge