IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ANTHONY DIAL,                        )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )          1:20-cv-1135
                                     )
ROBESON COUNTY,                      )
                                     )
          Defendant.                 )

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Before this court is Defendant Robeson County's Motion for
Summary Judgment. (Doc. 25.) For the following reasons, this
court will grant Defendant's motion.

**I.     PROCEDURAL HISTORY**

On May 16, 2017, Plaintiff Anthony Dial filed a charge of
employment discrimination alleging race and sex discrimination,
as well as retaliation, with the Equal Employment Opportunity
Commission ("EEOC"). (Ex. 1, 2017 EEOC Charge (Doc. 8-1).)[1] On
December 10, 2019, Plaintiff filed another charge of employment
discrimination alleging race discrimination and retaliation with
the EEOC. (Ex. 2, 2019 EEOC Charge (Doc. 8-2).) These charges

---

[1] All citations in this Memorandum Opinion and Order to
documents filed with the Court refer to the page numbers located
at the bottom righthand corner of the documents as they appear
on CM/ECF.

were timely submitted to the EEOC, and the EEOC issued Plaintiff right to sue letters, pursuant to 42 U.S.C § 200(e)-(5)(f) <u>et seq.</u> (<u>See</u> Compl. (Doc. 3) ¶¶ 12, 18, 22.) This court has previously found that Plaintiff's complaint incorporates by reference both of Plaintiff's charges of discrimination to the EEOC. (<u>See</u> Mem. Op. and Order (Doc. 12) at 3.)

Plaintiff filed his complaint in Guilford County Superior Court on November 12, 2020. (Compl. (Doc. 3) at 1.) Plaintiff alleged the following causes of action against Robeson County and Robeson County Department of Social Services: race and sex discrimination in violation of Title VII for Plaintiff's non-promotion to Director of the Department of Social Services in favor of a Black female; race discrimination in violation of Title VII for Plaintiff's non-promotion to Assistant County Manager in favor of a Caucasian male; retaliation in violation of Title VII; and violation of 42 U.S.C. §§ 1981 and 1983. (Compl. (Doc. 3) ¶¶ 7-39.) Robeson County and Robeson County Department of Social Services filed a Petition for Removal on December 16, 2020. (Doc. 1.) They then moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 7.) This court granted the motion as to Plaintiff's claims for Title VII race and sex discrimination in the non-promotion to Director of the Department of Social Services, Plaintiff's Title VII retaliation

- 2 -

claim, and Plaintiff's §§ 1981 and 1983 claims. (See Mem. Op. and Order (Doc. 12) at 34.) This court denied the motion to dismiss as to Plaintiff's claim of Title VII race discrimination in the non-promotion to Assistant County Manager. (See id.) Robeson County Department of Social Services was dismissed from this action because of the lack of statutory authority to proceed independently against the Department of Social Services, (id. at 9–11); Robeson County is the sole remaining Defendant in this action.

Defendant Robeson County (hereinafter, "Defendant") filed a motion for summary judgment on Plaintiff's sole remaining claim of Title VII race discrimination in the non-promotion to Assistant County Manager, (Doc. 25), as well as a supporting brief, (Br. in Supp. of Def. Robeson County's Mot. for Summ. J. ("Def.'s Br.") (Doc. 27)). Plaintiff responded in opposition. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Resp.") (Doc. 31).) Defendant replied. (Reply Br. in Supp. of Def. Robeson County's Mot. for Summ. J. ("Def.'s Reply") (Doc. 33).) Defendant's motion for summary judgment, (Doc. 25), is ripe for adjudication.

## II.  **FACTUAL BACKGROUND**

On a motion for summary judgment, the court views the evidence in the light most favorable to Plaintiff as the

- 3 -

nonmoving party. See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

### A.  Plaintiff's Background and Employment History

Plaintiff is a Native American male. (Compl. (Doc. 3) at 1; Answer (Doc. 13) at 2.) Prior to working for Robeson County, Plaintiff served in the Marine Corps from 1987 to 1993. (See Ex. 3, Excerpts from Tr. of Dep. of Anthony Dial ("Def.'s Excerpts Dial Dep.") (Doc. 25-3) at 6.) After leaving the Marine Corps, Plaintiff worked for the North Carolina Department of Corrections from 1994 to 2000 as a certified correctional officer and a certified armorer. (See id. at 4, 8.) During that time, Plaintiff attended night school at the Robeson County Community College for two years, after which Plaintiff transferred to University of North Carolina at Pembroke. (See id. at 5.)

After receiving his degree in 2000, Plaintiff left his job at the Department of Corrections to work for the Robeson County Department of Social Services ("Robeson County DSS"). (See id. at 9-10.) Plaintiff started as a foster care social worker in Child Protective Services, and he was in that position from approximately 2000 to 2002. (See id. at 10, 16-17.) In that role, Plaintiff "supervised visits for children that were in care[,] . . . offered services to their families[,] . . .

- 4 -

[assisted with family] reunification," and "[i]f those reunification efforts failed, . . . place[d] [children] with a relative, or even adoption." (<u>Id.</u> at 17.) It was not a supervisory role. (<u>See</u> <u>id.</u> at 17–18.)

From approximately 2002 to 2005, Plaintiff worked as a Child Protective Services investigator with an official job title of Child Protective Services Social Worker III. (<u>See</u> <u>id.</u> at 18.) In that role, Plaintiff "received referrals or complaints . . . [regarding] children that were abused and neglected"; Plaintiff "investigate[d] those complaints" and "offer[ed] services." (<u>Id.</u> at 18–19.) This was also not a supervisory role. (<u>See</u> <u>id.</u> at 19.)

In 2005, Plaintiff became a foster care supervisor, and he served in that role for approximately two and a half years. (<u>See</u> <u>id.</u> at 19–20.) In that role, Plaintiff "managed caseloads," monitored the "state or federal aid received by [each] child," and "supervised LINKS," which is a "program that helps children transition" out of foster care. (<u>Id.</u> at 20–23.) Next, Plaintiff worked as a supervisor in the investigative unit of Robeson County DSS for approximately two and a half years. (<u>See</u> <u>id.</u> at 23–24.) Although Plaintiff's positions from 2005 to present may have included supervisory responsibilities, Plaintiff was

- 5 -

classified as a supervisor for approximately five years. (<u>See</u>
<u>id.</u>)

From 2009 until 2014, Plaintiff served as an income
maintenance administrator for Robeson County DSS, which involved
grantwriting for a new child advocacy unit, as well as meeting
with multidisciplinary stakeholders such as the DA's office, law
enforcement, and social workers. (<u>See</u> <u>id.</u> at 24–26.) In this
position, Plaintiff supervised several program managers within
Robeson County DSS. (<u>See</u> <u>id.</u> at 29.)

From 2014 to the present, Plaintiff serves as program
manager for child support, serves as the hearing officer for
Medicaid fraud, and does outreach for Robeson County DSS at job
fairs. (<u>See</u> <u>id.</u> at 29–32). This is essentially a lateral
position to Plaintiff's prior role as income maintenance
administrator, along with a few additional duties. (<u>See</u> <u>id.</u> at
31.) Finally, Plaintiff took on ad-hoc leadership duties during
Hurricanes Matthew and Florence as a shelter manager working
with the Red Cross. (<u>See</u> <u>id.</u> at 32–33.)

Outside of his work experience, Plaintiff is involved in
several community organizations. Plaintiff is the vice chair of
the Robeson House shelter in Lumberton, which is "an emergency
shelter for children ages seven to [sixteen]." (Ex. A, Pl. Dep.
Excerpts ("Pl.'s Excerpts Dial Dep.") (Doc. 31-1) at 3.)

Plaintiff is also the vice chair of the Rape Crisis Center Board. (Id. at 4) Plaintiff serves on the Clean and Green Committee in Robeson County and is the watch commander for his district's community watch. (Id.) Plaintiff is a deacon at his church. (Id.) Plaintiff is involved with the Domestic Violence Task Force. (See id. at 5.) Finally, Plaintiff has recently been involved with the Pembroke Lions Club. (See id. at 4.)

**B.   Assistant County Manager Position**

Kellie Blue is the County Manager for Robeson County. (See Decl. of Kellie Blue ("Blue Decl.") (Doc. 28) at 1.) Blue was appointed to this position by the Robeson County Board of Commissioners pursuant to a four-year contract, and she began this job on January 1, 2019. (See id.) Previously, she served as Assistant County Manager and reported to the former County Manager. (See id.) Both Blue and her predecessor as County Manager are Native American. (See id.)

Robeson County typically has two Assistant County Managers, each of whom oversee different departments on behalf of the County Manager. (See id. at 2.) In Kellie Blue's role as Assistant County Manager immediately before her appointment to County Manager, she oversaw "human services, the health department, transportation, insurance and risk management, emergency management services, communications, IT, claims, and

- 7 -

planning and zoning." (Id.) The other Assistant County Manager —
Jason King — was responsible for "the County's water and sewer
enterprises, building management, fleet management, veterans'
services, and human resources." (Id.) It appears that the two
Assistant County Managers divide up Robeson County's different
departments and oversee them independently of each other, with
each reporting to the County Manager. (See id.)

When Kellie Blue was appointed to County Manager, her
previous position as Assistant County Manager became vacant.
(See id.) Blue wanted to "fill the position as soon as possible
with someone who could 'hit the ground running' and would not
need extensive training, as [she] was very busy transitioning
into the County Manager role at the time." (Id.)

Robeson County's Human Resources Department posted the open
position on the Robeson County Employment Website on February
12, 2019. (See id. at 2; see also Ex. A, Job Posting for 2019
Assistant County Manager Position (Doc. 28-1).) The job
description included a list of essential job functions and
minimum qualifications. (See generally Ex. B, 2019 Job
Description for Assistant County Manager ("Job Description")
(Doc. 28-2).) The minimum training and experience included:

> Bachelor's degree in Business/Public
> Administration, or a related field; considerable
> increasingly responsible experience in the
> administration and management of local government

- 8 -

programs and personnel; or any equivalent combination
of training and experience which provides the required
skills, knowledge and abilities.

(Id. at 4 (emphasis added).) Essential job functions included,

inter alia:

> Assists the County Manager in development of
> policies and procedures pertaining to personnel,
> capital improvement, fiscal control, construction
> projects and public relations issues; serves as member
> of County Manager's management team, participating in
> meetings and discussions to formulate and develop
> planning on various issues pertaining to operations of
> County government.

> Oversees County capital improvement projects,
> ensuring adherence to specified standards; confers
> with department heads, supervisory boards, County
> Commissioners, court officials, architects,
> contractors, etc., to resolve disputes, as necessary.

> Oversees, coordinates and administers various
> personnel programs in accordance with local, state and
> federal ordinances, statutes and laws; develops
> amendments to local personnel ordinance, as necessary,
> and presents recommendations to County Commissioners.

> Represents the County in official capacities on
> various regional and County boards and committees.

> Assumes duties of County Manager in his/her
> absence, ensuring adherence to established policies,
> procedures and standards.

(Id. at 2.)

## C.    **Selection Process**

Robeson County's Human Resources Department collected and

screened job applications, resulting in eight qualified

applicants being moved forward for interviews. (See Blue Decl.

- 9 -

(Doc. 28) at 3.) These candidates included Plaintiff and Shelton Hill. (See id.) To assess the candidates, Blue prepared a list of interview questions, as well as a budget exercise. (See id.) Blue interviewed both Plaintiff and Hill "on or about Wednesday, May 1, 2019." (Id.) During the interview, Blue "followed the script [of questions] for each . . . applicant." (Ex. 1, Tr. of Dep. of Kellie Blue ("Blue Dep.") (Doc. 25-1) at 12.) Blue testified that she had total discretion in selecting an Assistant County Manager; the Robeson County Board of Commissioners did not provide any input, solicited or unsolicited, regarding candidates. (See id. at 6-8).

Ultimately, Shelton Hill, a Caucasian male, was selected for the Assistant County Manager position. (See Ex. 2, Tr. of Dep. of Shelton Hill ("Hill Dep.") (Doc. 25-2) at 5.) Hill has a high school diploma but not a bachelor's degree. (See Appl. of Shelton Hill for Assistant County Manager Position ("Hill Job Appl.") (Doc. 28-4) at 3, 8.) "Hill had a decade and a half of management experience in one of the largest textile firms in Robeson County, supervising over a hundred people." (Blue Decl. (Doc. 28) at 5-6.) After his private sector work, Hill moved to the public sector. (See id. at 5.) "Hill worked for the Lumber River Council of Governments for two years and the Department of Transportation for a year." (Id. at 5.) Hill then began working

- 10 -

for Robeson County, which altogether "gave him almost 20 years' experience in public sector work directly related to the role he was interviewing for." (Id.) Hill "had worked in transportation, human services, human resources, risk management, safety, and inspections. . . . This included technical areas such as obtaining Medicaid/Medicare and other grant reimbursements, handling claims, and managing departments that provide important services to the County's residents." (Id.) Hill had also previously worked with Blue; she was his supervisor in his role as "County Risk Manager/Safety Officer." (See Hill Job Appl. (Doc. 28-4) at 6.)

Blue testified that "when [she] considered the applicants, [she] felt that Mr. Hill had the most relevant experience for the position." (Blue Decl. (Doc. 28) at 5.) Blue elaborated:

> He had a broad . . . skill set that would be essential to the manager's office in an assistant manager role. . . . He had worked in our human resource office, handled risk management. That is a key . . . facet of an assistant manager. . . . One of the other areas is SEATS. He had worked in our regional transportation department [and was] very familiar with . . . the SEATS program.

(Blue Dep. (Doc. 25-1) at 14–15.) Although Hill did not have a four-year college degree, Blue testified that either a college degree or relevant work experience was necessary and that Hill's lack of a college degree was not a concern for Hill's candidacy. (See id. at 16–17.) She explained that "Hill's prior experience

- 11 -

gave him a proven track record in the areas that the person hired as Assistant County Manager would be expected to supervise." (Blue Decl. (Doc. 28) at 5.)

In contrast, regarding Plaintiff's qualifications, Blue testified that Plaintiff's "concentration has been in one area, and that is our DSS department, and then Mr. Hill had a broad array . . . of experience [in] what we needed in the manager's office with some HR, risk management . . . ." (Blue Dep. (Doc. 25-1) at 20.)

D.  **Tom Taylor's Alleged Involvement in the Selection Process**

Tom Taylor is an elected member of the Robeson County Board of Commissioners. (See Ex. 5, Decl. of H.T. ("Tom") Taylor, Jr. ("Taylor Decl.") (Doc. 25-5) at 1.) Taylor also owns and operates a hardware store in Lumberton. (See id.)

Plaintiff alleges that County Commissioners, like Taylor, have influence on Robeson County personnel decisions. (See Pl.'s Resp. (Doc. 31) at 2–3, 8–9.) In support, Plaintiff cites the unsworn and unsigned affidavit of Roger Oxendine, a former Robeson County Commissioner. (See id. at 9; see also Aff. of Roger Oxendine (Doc. 31-3) at 2.) Plaintiff also testified that Taylor stated in a three-way phone conversation between Taylor, Plaintiff, and Reese Oxendine (another Robeson County employee)

- 12 -

that "[we] would not have two Indians and [an] African-American in administration. [We'd] have to have a White." (Pl.'s Excerpts Dial Dep. (Doc. 31-1) at 13-15 (cleaned up).) Taylor denies making any such statement.[2] (See Taylor Decl. (Doc. 25-5) at 2.) Taylor also testified that he "never told Kellie Blue anything about who she should hire for the [Assistant County Manager] position." (Id. at 3.)

Additionally, Plaintiff's wife, Rhonda Dial, testified that Taylor told her, in discussing the Assistant County Manager position, "[t]hat is Shelton Hill's job." (See Ex. B, Aff. of Rhonda Dial (Doc. 31-2) at 3.)

## III. **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). When reviewing a summary judgment motion, the court must view all evidence in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 600-01 (1986). This court's summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a

---

[2] As will be explained infra Section IV.C.2, Taylor's alleged statement does not create a genuine issue of material fact, even if admissible.

matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986).

The moving party bears the initial burden of demonstrating "that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp.</u>, 477 U.S. at 325. If the "moving party discharges its burden . . ., the nonmoving party then must come forward with specific facts showing that there is a genuine issue for trial." <u>McLean v. Patten Cmtys., Inc.</u>, 332 F.3d 714, 718-19 (4th Cir. 2003) (citing <u>Matsushita Elec. Indus. Co</u>, 475 U.S. at 586-87). Summary judgment should be granted "unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented." <u>Id.</u> at 719 (citing <u>Liberty Lobby</u>, 477 U.S. at 247-48).

## IV. <u>ANALYSIS</u>

Plaintiff alleges a Title VII employment discrimination claim against Defendant for failure to promote Plaintiff to Assistant County Manager on the basis of race. (Compl. (Doc. 3) at 2-3.) Plaintiff claims that the County Manager, Kellie Blue, chose not to promote him to the position of Assistant County Manager even though he was more qualified than Shelton Hill, the Caucasian male ultimately hired for the position. (<u>See</u> <u>id.</u>)

Title VII makes it an unlawful employment practice for an employer, including a state agency, "to discriminate against any

- 14 -

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). A Title VII plaintiff may survive a summary judgment motion through one of two avenues of proof. A plaintiff may establish through direct or circumstantial evidence that race, though not the sole reason, was a "motivating factor" in the denial of a promotion. See Diamond v. Colonial Life & Accident Ins., 416 F.3d 310, 318 (4th Cir. 2005). Alternatively, a plaintiff may use the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See id. Because the parties proceed under the McDonnell Douglas framework in their arguments, this court will proceed under the McDonnell Douglas burden-shifting analysis. See generally Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000) (providing an overview of the McDonnell Douglas burden-shifting framework).

Under McDonnell Douglas, a plaintiff must first establish a prima facie case of discrimination. See id. at 142. If the plaintiff establishes his prima facie case, the burden then shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for its actions. See id. (internal citations omitted). If the employer does so, the burden shifts back to the plaintiff to present evidence that the employer's

articulated reason was pretext for unlawful discrimination. See
id. at 143. The plaintiff bears the ultimate burden of
persuasion. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S.
248, 253 (1981).

Here, although Plaintiff establishes a prima facie case of
discrimination, Defendant provides a legitimate, non-
discriminatory reason for promoting Hill over Plaintiff.
Further, Plaintiff does not demonstrate that Defendant's
articulated reason was pretext for unlawful discrimination.
Thus, this court will grant Defendant's motion for summary
judgment.

## A.   Plaintiff's Prima Facie Case

Viewed in the light most favorable to Plaintiff, this court
finds that Plaintiff has established a prima facie case of race
discrimination in his non-promotion to Assistant County Manager.
To establish a prima facie case for discriminatory failure to
promote, a plaintiff must prove that he: (1) is a member of a
protected class; (2) applied for the position; (3) was qualified
for the position; and (4) was rejected under circumstances
giving rise to an inference of unlawful discrimination. See
Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1129 (4th
Cir. 1995). "The burden of establishing a prima facie case of
disparate treatment is not onerous. The plaintiff must prove by

- 16 -

a preponderance of the evidence that []he applied for an available position for which []he was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." Burdine, 450 U.S. at 253.

Here, neither party disputes that Plaintiff has established the first two elements of a prima facie case. First, Plaintiff, as a Native American, is a member of a protected class. (Compare Def.'s Br. (Doc. 27) at 16, with Pl.'s Resp. (Doc. 31) at 4.) Second, Plaintiff applied for the Assistant County Manager Position. (Compare Def.'s Br. (Doc. 27) at 16, with Pl.'s Resp. (Doc. 31) at 4.)

Further, Defendant concedes the third element, as Defendant does not argue that Plaintiff was unqualified for the Assistant County Manager Position, but rather, that Hill was more qualified than Plaintiff. (See Def.'s Br. (Doc. 27) at 15–19.) Blue's Declaration also suggests that Plaintiff was qualified for the position of Assistant County Manager, as Blue testified that only qualified candidates advanced to the interview stage of the selection process. (See Blue Decl. (Doc. 28) at 3 ("The eight remaining, qualified applicants, including Anthony Dial and Shelton Hill, were interviewed by me over the course of several days.").)

Finally, "[t]o satisfy the fourth prong, [Plaintiff] need only show that the position was filled by a person not in the protected class." Weaks v. N.C. Dept. of Transp., 761 F. Supp. 2d 289, 298 (M.D.N.C. 2011); see also Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994). The Assistant County Manager position was filled by Shelton Hill, who is a Caucasian, (see Hill Dep. (Doc. 25-2) at 5), so the position was filled by a person not in a protected class.

However, "[m]ore recently, the Fourth Circuit has cast doubt on [prima facie case analysis], stating that such a rule would mean 'any qualified member of a protected class who alleges nothing more than that []he was denied a position or promotion in favor of someone outside [his] protected class would be able to survive a Rule 12(b)(6) motion.'" Velez v. Wormuth, No. 7:20-CV-20-D, 2022 WL 3022134, at *6 (E.D.N.C. July 29, 2022) (quoting McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 588 (4th Cir. 2015)). In line with that critique, Defendant argues that to satisfy the fourth prong of the prima facie case, Plaintiff must show that a "comparator of a different protected class than [P]laintiff was selected" for the job, where "there must be 'enough common features between [Plaintiff and the comparator] to allow for a meaningful comparison.'" (Def.'s Br. (Doc. 27) at 16 (quoting Humphries v.

- 18 -

CBOCS West, Inc., 474 F.3d 387, 405 (7th Cir. 2007).) Defendant contends that Hill is not an appropriate comparator to Plaintiff to satisfy the fourth prong because they both "brought differing combinations of education and experience to their applications." (Id. at 20.)

This court is not convinced by Defendant's argument as a matter of law. Whether or not the comparator is sufficiently similar to establish an inference of discrimination here appears to present an issue of fact for the jury to determine whether there are enough common features. For purposes of summary judgment, Plaintiff and Hill were both qualified for the Assistant County Manager position; whether Hill's experience is sufficient to distinguish Plaintiff's college degree and experience is an issue of fact. Furthermore, it appears to this court that the appropriate comparators here in a failure to promote case would be similarly-situated applicants for the Assistant County Manager. Plaintiff and Hill, both qualified candidates for the job, one of whom is a member of a protected class and one of whom is not, are sufficiently similar for purposes of summary judgment. Accordingly, as Hill, who is not a member of a protected class, was promoted over Plaintiff, a member of a protected class, an inference of discrimination may arise. See Gary v. Facebook, Inc., 822 F. App'x 175, 180 (4th

- 19 -

Cir. 2020) ("Under McDonnell Douglas, an inference of
discrimination arises from evidence that the employer favored a
comparator over the plaintiff.").

Thus, this court finds that Plaintiff has established a
prima facie case of discrimination.

### B. Defendant's Legitimate, Non-Discriminatory Reasons

"Under McDonnell Douglas, once a plaintiff establishes a
prima facie case, the burden shifts to the defendant to produce
a non-discriminatory explanation for the decision." Weaks, 761
F. Supp. 2d at 298. "The burden on Defendants at this stage is
one of production, not persuasion, and the court's analysis 'can
involve no credibility assessment.'" Id. at 298-99 (quoting St.
Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).

Defendant proffers that Hill was selected for the position
of Assistant County Manager because he was the better-qualified
candidate. (See Blue Decl. (Doc. 28) at 5.) "[R]elative employee
qualifications are widely recognized as valid, non-
discriminatory bases for any adverse employment decision." Evans
v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir.
1996). And an "employer has discretion to choose among equally
qualified candidates provided the decision is not based upon
unlawful criteria." Id.

Defendant explains that "Hill worked in leadership positions in several County departments, including the office for risk management, safety officer, operations manager, and safety officer for the DOT transportation system, and as a combined assistant director of human resources and risk manager." (Def.'s Br. (Doc. 27) at 9; <u>see also</u> Blue Decl. (Doc. 28) at 5-6.) Blue testified that Hill's experiences in human resources and risk management, as well as his familiarity with the SEATS program, were key in selecting Hill for the position. (Blue Dep. (Doc. 25-1) at 15.) This is consistent with Defendant's job description for the Assistant County Manager position, which requires: human resources skills, such as "acting on employee problems, selecting new employees, appraising employee performance, recommending promotions, discipline, termination and salary increases"; risk and safety compliance skills, such as "develop[ing] policies, procedures, and programs to meet safety standards set by state and federal laws, codes, and regulations including United States and state occupational safety and health administration regulations," along with managing "liability and property insurance programs"; and familiarity with the County's transportation and SEATS programs, as the Assistant County Manager "[a]dministers [the] County vehicle program." (Job Description (Doc. 28-2) at 2, 3.)

- 21 -

This contrasts with Plaintiff's more concentrated work experience solely in the Robeson County DSS. (Def.'s Excerpts Dial Dep. (Doc. 25-3) at 9-10, 16-29.)

Further, Blue testified that she wanted to hire someone who could "hit the ground running," (see Blue Decl. (Doc. 28) at 2), which would likely be an applicant with familiarity across multiple Robeson County departments, like Hill, rather than someone whose work is concentrated only in one department, like Plaintiff.

Additionally, Defendant points to Hill's extensive supervisory and managerial experience, in comparison to Plaintiff's limited supervisory experience. (Def.'s Br. (Doc. 27) at 10-11.) Specifically, Hill supervised "over a hundred people" for a decade and a half while working in the private sector before he worked for Robeson County. (Blue Decl. (Doc. 28) at 5.) While classified as a supervisor, Plaintiff had only supervised five foster care social workers from 2005 to 2008 and then four investigative social workers from 2008 to 2009. (Application of Pl. Anthony Dial for Assistant County Manager Position ("Pl. Job Appl.") (Doc. 28-3) at 4-5.)

Plaintiff argues that Blue failed to consider Plaintiff's experiences outside of working for the Robeson County Department of Social Services, including his service "in the Marine Corp,

- 22 -

[employment with the] Department of Public Safety, and volunteer organizations." (Pl.'s Resp. (Doc. 31) at 5-6.) This court is not convinced by Plaintiff's argument because even if this court accepts Plaintiff's argument as to his additional experience, those facts do not rebut Defendant's nondiscriminatory reasons for the selection of Hill.

This stage of analysis "can involve no credibility assessment." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993). The defendant "need only articulate 'reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'" Moore v. Mukasey, 305 F. App'x 111, *4 (4th Cir. Dec. 30, 2008) (emphasis in original) (quoting St. Mary's Honor Ctr., 509 U.S. at 507). At summary judgment, it is Plaintiff's burden to come forward with evidence to create an issue of material fact; this court does not weigh evidence. See Reeves, 530 U.S. at 142-43 (explaining that the defendant's burden at the second stage of the McDonnel Douglas analysis "is one of production, not persuasion"); Bius v. Thompson, No. 02cv01120, 2004 WL 1348221, at *5 (M.D.N.C. June 14, 2004) ("This court 'does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination.' 'When an employer

- 23 -

articulates a reason for failing to select the plaintiff not forbidden by law, it is not the court's province to decide whether the reason was wise, fair, or even correct.'") (cleaned up).

In sum, Defendant has presented evidence that Hill was selected for the Assistant County Manager position over Plaintiff because Hill had a wider array of relevant prior work experiences in key areas of responsibility for an Assistant County Manager and because Hill had more supervisory and managerial experiences. Although Plaintiff alleges that he had equivalent experience, Plaintiff has not presented evidence sufficient to create an issue of material fact as to Blue's testimony. Thus, Defendant has articulated a legitimate, non-discriminatory reason for its decision to promote Hill over Plaintiff, meeting its burden at this stage of the McDonnell Douglas framework.

### C. **Plaintiff's Evidence of Pretext**

Once an employer satisfies its burden of providing a legitimate, non-discriminatory reason, the burden "returns to the plaintiff to 'prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and the true reason is discriminatory or retaliatory.'" Gary, 822 F. App'x at 180. "A plaintiff alleging a failure to promote

- 24 -

can prove pretext by showing that he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 259 (4th Cir. 2006). "The ultimate burden of persuasion remains on the plaintiff at all times." Weaks, 761 F. Supp. 2d at 300 (citing Burdine, 450 U.S. at 252–53.) Thus, Plaintiff must "forecast sufficient evidence for a jury to conclude that (1) he was the better qualified candidate or (2) Defendant['s] stated reason for promoting [Hill] over him was pretextual." See id. This court finds that Plaintiff has not forecast sufficient evidence that he was a better qualified candidate or that Defendant's stated reason for promoting Hill was pretextual. Thus, Plaintiff fails to meet his burden at the third and final stage of the McDonnell Douglas framework.[3]

---

[3] "[A]n equally valid way to prove pretext is to provide evidence that the employer's proffered reason was not the actual reason relied on, but was rather a false description of its reasoning — albeit one based on a real difference in qualifications — manufactured after the fact." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 648 n.4 (4th Cir. 2002). Plaintiff has not presented any such argument, so this court will not consider this method of showing pretext.

### 1. **Plaintiff's Argument that he was the Better Qualified Applicant**

Plaintiff contends that he is a superior candidate for Assistant County Manager than Hill because he has a college degree, while Hill does not, and because he has greater supervisory experience than what was represented by Blue. (See Pl.'s Resp. (Doc. 31) at 6–7.) This argument is not convincing. "When a plaintiff relies on his qualifications to establish pretext, he must do more than show his qualifications were similar or only slightly superior to those of the person eventually selected." Weaks, 761 F. Supp. 2d at 300. Instead, he must either show that "qualifications were so plainly superior that the employer could not have preferred another candidate" or "provide evidence that the employer's proffered reason was not the actual reason relied on, but was rather, a false description of its reasoning . . . manufactured after the fact." Dennis, 290 F.3d at 648 n.4. As Plaintiff does not present evidence that Blue's explanation was "manufactured after the fact," Plaintiff must show his qualifications were "plainly superior" to Hill's. See id.

Plaintiff focuses on "a college degree as the first (and presumably primary) job qualification" for the Assistant County

manager position. (Pl.'s Resp. (Doc. 31) at 7.) The job description states:

**<u>MINIMUM TRAINING AND EXPERIENCE</u>**

> Bachelor's degree in Business/Public Administration, or a related field; considerable increasingly responsible experience in the administration and management of local government programs and personnel; or any equivalent combination of training and experience which provides the required skills, knowledge and abilities.

(Job Description (Doc. 28-2) at 4.) Thus, the plain language of the job description requires as minimum qualifications either a bachelor's degree "or" relevant "training and experience which provides the required skills, knowledge, and abilities." (<u>Id.</u>) Plaintiff met the educational requirements and it is not disputed that Plaintiff had a Bachelor's degree and Hill did not.

However, Blue explained that Hill's past work experiences were in key related areas of the Assistant County Manager position and that she prioritized that experience over education, as Blue sought an applicant who could "hit the ground running" over someone who may need more training. (<u>See</u> Blue Decl. (Doc. 28) at 2, 6.) Plaintiff has presented no evidence to contradict Blue's subjective determination that Hill's broad array of experience, including human resources, risk management, and SEATS, (<u>see</u> Blue Dep. (Doc. 25-1) at 20), were not

- 27 -

appropriately desirable skills for the Assistant County Manager position. A college degree or relevant experience were minimum qualifications but did not establish superior qualifications for the position. See Westinghouse Savannah River Co., 406 F.3d at 270-71 (explaining that just because the plaintiff exceeded the minimum educational requirements for a job and had more education than her competitor does not alone establish that the employer's reasons for promoting her competitor were pretext for discrimination). Plaintiff's argument that his college degree makes him more qualified is not persuasive. See id. (explaining that when defendants "base the promotion decision on the core and functional competencies listed in the job description and not on the educational levels of applicants, [the plaintiff] cannot rely on [his] educational background to establish that the defendants' reasons for promoting [a less-educated candidate] was a pretext for discrimination").

Additionally, Plaintiff contends that Blue failed to fully consider all of Plaintiff's supervisory experiences while in the Marine Corps and in community organizations. (Pl.'s Resp. (Doc. 31) at 6-7.) However, Plaintiff only included his involvement with Robeson House, not any other community organizations, in his application for the Assistant County Manager position, (see Pl. Job Appl. (Doc. 28-3) at 8), and Plaintiff does not contend

those experiences were discussed in his interview. Further, Plaintiff held supervisory roles for less time than Hill, and Plaintiff supervised fewer people than Hill. Thus, this argument is not sufficient to establish a genuine issue of material fact as to whether Plaintiff was "plainly superior" to Hill for the Assistant County Manager position.

The record does not establish a material issue of fact concerning whether Plaintiff was more qualified than Hill. Hill had extensive supervisory experience and experience in areas of responsibility for the Assistant County Manager position. Plaintiff, although he had completed a bachelor's degree, only had experience within the Robeson County DSS. Further, Hill had previously worked directly under Jason King, the other Assistant County Manager, and Blue, the former Assistant County Manager. (See Hill Job Appl. (Doc. 28-4) at 6-7.)

## 2. Circumstantial Evidence Undermining Defendant's Stated Reason

Plaintiff also proffers evidence to establish that Defendant's stated reason for promoting Hill over Plaintiff for the Assistant County Manager position was pretextual. However, neither of the two arguments Plaintiff advances are convincing.

First, Plaintiff alleges that Taylor, a member of the Robeson County Board of Commissioners, had influence on the

- 29 -

selection process and did not want a Native American to be
selected for the role. (See Pl.'s Resp. (Doc. 31) at 9.)
Plaintiff's allegation rests upon two facts: that the Board of
Commissioners has input on personnel decisions, based upon a
former Commissioner's testimony, (see Ex. C, Aff. Roger Oxendine
(Doc. 31-3) at 2); and that Taylor stated to Plaintiff that "we
would not have two Indians and an African-American in
administration," (Pl.'s Excerpts Dial Dep. (Doc. 31-1) at
13-15). Oxendine's affidavit — which is not sworn, notarized, or
signed — cannot be considered by this court on a motion for
summary judgment.[4] Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir.
1993) ("It is well established that unsworn, unauthenticated
documents cannot be considered on a motion for summary
judgment."). Further, Blue testified that "[t]he Board of
Commissioners did not have any say in my decision." (Blue Decl.
(Doc. 28) at 7.) Thus, based on the record this court may

---

[4] Even if Oxendine's affidavit is considered, it would not
affect this analysis. In terms of specific facts, the affidavit
states that Oxendine served as a County Commissioner and that
Oxendine knows both Plaintiff and Blue. However, Oxendine's
familiarity with "standard practice" and "influence" is too
conclusory to create a material issue of fact as to the hiring
decision at issue here. (See Ex. C, Aff. Roger Oxendine (Doc.
31-3) at 2.) He offers no specific factual testimony or
knowledge as to the relevant events of this action; it is
entirely speculative as to what may have occurred during the
hiring of Hill or whether Oxendine has any knowledge of "facts
that would be admissible in evidence." See Fed. R. Civ. P.
56(c)(4).

consider, this court finds that the Board of Commissioners did not have influence on Blue's hiring decision. Also, Plaintiff's testimony regarding Taylor's alleged statement is inadmissible hearsay.[5] Even if admissible, Taylor's statement does not create a genuine issue of material fact as to unlawful racial discrimination in the Assistant County Manager hiring process. Nothing in the record suggests Taylor was involved in the hiring process or that he provided input or influence in the hiring decision. Consequently, Plaintiff's allegation that the Board of Commissioners provided impermissible race-based input in the hiring decision is unavailing.

---

[5] Plaintiff contends that Taylor's statement is admissible as a statement against Defendant's interest, given that Taylor, as a County Commissioner, is an agent of Defendant Robeson County. (Pl.'s Resp. (Doc. 31) at 9.) The statement against interest hearsay exception does not apply here, as it only applies when the declarant (Taylor) is unavailable. See Fed. R. Evid. 804(b)(3). This court has not been presented evidence that Taylor is unavailable to testify. It is also not admissible as a non-hearsay opposing party statement under Fed. R. Evid. 801(d)(2)(D) because Taylor's statement was not made "on a matter within the scope of that [agency or employment] relationship." See Fed. R. Evid. 801(d)(2)(D). "In order for a statement to qualify as a party admission under Fed. R. Evid. 801(d)(2)(D), the declarant must have actually been involved in the decision to hire or fire the person bringing the discrimination charge." Goss v. George Washington Univ., 942 F. Supp. 659, 662 (D.D.C. 1996). Nothing in the record suggests Taylor provided input or influence on the hiring decision or was involved in the hiring process, so his statement is not admissible as a party admission. Regardless, this court declines to make an evidentiary finding as to the admissibility of Taylor's alleged statement, as even if admissible, the statement does not create a genuine issue of material fact.

- 31 -

Second, Plaintiff alleges that Tom Taylor told Plaintiff's wife, Rhonda Dial, that the Assistant County Manager position was "Shelton Hill's job" before the hiring decision was made. (See Pl.'s Resp. (Doc. 31) at 2-3 (referencing Rhonda Dial's affidavit); see also Ex. B, Aff. of Rhonda Dial (Doc. 31-2) at 3.) However, this allegation does not provide evidence of unlawful race-based discrimination. This statement is inadmissible hearsay that this court cannot consider, as it is being offered for the truth of the matter asserted — that Shelton Hill was already selected for the Assistant County Manager position. Even if admissible, it does not provide evidence of race-based discrimination as a pretext for Defendant's promotion decision. At most, it suggests preselection, which "'is not sufficient evidence for jurors reasonably to conclude' that the defendant['s] explanation for hiring [Hill] was pretext." See Westinghouse Savannah River Co., 406 F.3d at 271 (quoting Mackey v. Shalala, 360 F.3d 463, 468-69 (4th Cir. 2004)). "[P]re-selection does not violate Title VII when the pre-selection is based on the qualifications of the pre-selected candidate, and not on some basis prohibited by Title VII." Weaks, 761 F. Supp. 2d at 306 (citing Mackey, 360 F.3d at 468-69). "[W]hile pre-selection may establish that an employee was 'unfairly treated, it does not by itself prove

- 32 -

racial discrimination.'" Id. (quoting Westinghouse Savannah

River Co., 406 F.3d at 271).

In sum, Plaintiff does not raise a genuine dispute of

material fact to suggest Defendant's proffered reason for

promoting Hill over Plaintiff was pretextual.

**V.    CONCLUSION**

Plaintiff establishes a prima facie case of race

discrimination in his non-promotion to Assistant County Manager

under McDonnell Douglas. However, Defendant meets its burden of

articulating a legitimate, non-discriminatory reason for its

action — that Hill, the selectee, was more qualified than

Plaintiff. Finally, Plaintiff does not raise a genuine dispute of

material fact suggesting that Defendant's stated reason was

pretextual. Accordingly, Defendant is entitled to judgment as a

matter of law.

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary

Judgment, (Doc. 25), is **GRANTED**.

This the 27th day of March, 2023.

_____
United States District Judge

- 33 -